We have, for oral argument, two cases on today's docket. We're going to begin with cause number 21-40282, Valazquez v. Bentler Automotive Corporation. Is the court here on behalf of the Bentler Appellant, and I have with me at counsel table Mr. Ryan Anderson, who is counsel for co-appellant Valazquez. During my presentation this morning, I intend to focus on the lower court's error with respect to the construction of Chapter 82, the standing issue specific to Mr. Valazquez. There are several specific points related to the Chapter 82 issue that I want to address, but I think that an appropriate point of departure is to appropriately frame the nature of the fundamental error with the way that the appellees have characterized the operation of the statute, and in particular, the concept of a seller as used within Chapter 82. The appellee's position has been the term seller purportedly can have only one meaning or understanding for all times, for all purposes, and in all contexts, notwithstanding the fact that the Texas legislature defined seller as a term of art with unique, specific, and broad meaning for purposes of Chapter 82. We never get to that if the severance knocked out jurisdiction, do we? Your Honor, you perhaps would not, but I do not believe that the severance did knock out our jurisdictional, the jurisdictional issue because of the third-party practice principles that we have briefed, although this matter, at first blush, may look like the type of matter whereby the LLC parties and their citizenship might have some dispositive import with respect to jurisdiction, because all of those entities were added by way of third-party practice in a case over which we think that the environments in the various complaints make clear the court had diversity of jurisdiction. Under no circumstances, we would submit with the citizenship issues with respect to the LLC cancel jurisdiction, and I might add, unlike certain cases where the severance of a cause of action was treated as potentially problematic for jurisdictional purposes, in this case, the underlying causes of action are continuing to pend before the lower court, which we think preserves the fundamental jurisdiction, and the severance solely for appellate purposes does not compromise that. Turning back to the Chapter 82 issue, there are two points that I'd like to focus on. What do you mean by severance solely for appellate purposes? They're severed. They're severed. We would think that the proper way to characterize this would be more in the nature of a Rule 54 certification, in essence, conveying that there's no just reason. But that's not what happened here. 54 may very well have been another way to go. It presumably could be a way to go in the future, but isn't this a 21 case, not a 54b case? The court did utilize the Rule 21 severance procedure to carve it out, but even in the— And I believe, pardon me if I'm wrong, it's not just that the court did that. It's what was but it was requested specifically, and it is reflected in the court's order that the court did it solely so that the Chapter 82 indemnity claims could be appealed without delay. And so we were— Does it matter what the court said, if he actually severed it, if she— Your Honor, we respectfully think that it does not, because it would almost elevate form over substance. We respectfully submit to treat it as if it did, because the court's intent all along was— We're talking about the federal rules, so we'd elevate form over substance all the time. That's a fair observation, Your Honor. But we were talking about whether or not that the utilization of the Rule 21 severance procedure should not have that effect, because the federal rules do not say in and of themselves that when you sever one cause of action solely so you can facilitate a more expeditious appeal, that jurisdiction terminates. I think the case authorities have looked at some very different scenarios and said that questions, but the only authority that I could find in the Fifth Circuit, and it's cited its reference in our brief, is an authority that talks about a scenario where the underlying claims that had the jurisdictional prerequisites had terminated. There was a severed counterclaim, and the counterclaim would have continued to append in federal court without there being some jurisdiction. That's very different than what happened here. And so since we're talking about a jurisprudential overlay on the operation of the federal rules, I think those types of distinctions are fairly important, because the effect here was merely to facilitate a more expeditious appeal over a case in which the court already had jurisdiction, with the contemplation of the court that once this appeal was concluded, we think that the cause of action potentially, for instance, will be consolidated. So that's what I mean by this is more in the nature of a certification to a Rule 54 certification to allow expeditious appeal, as opposed to truly carving out to treat the claims as if they have solely standalone significance. So hypothetically, let's say that, again, hypothetically, the panel decides to go with form over substance. There are situations where courts do form over substance, and the result ends up being where you can get to the same result, just do it over on remand or in a new proceeding? Well, we would have to take a look at the jurisdictional issues anew, Your Honor. In other words, if let's say Rule 21 leads to no jurisdiction, the parties can refile the third-party claim and start over, right? It's without prejudice, without prejudice to the merits. Your Honor, I think that that is probably correct, because the jurisdictional defect would not have any effect on the merits of the cause of action. That would not be the ideal scenario. I realize it's wasteful, in a sense, but you're going to get to the substantive merits issues eventually. In principle, Your Honor. But we would just reiterate that we think that because the federal rules do not in and of themselves articulate that the severance procedure relative to the Rule 54 certification procedure necessarily translates into a termination of jurisdiction. But Honeywell did. I believe that that was one of the cases, Your Honor, that cited back to the earlier Fifth Circuit case, which was looking at the scenario in which the underlying claim had been terminated. And so when I read Honeywell, it was a bit murky in my reading as to whether or not the Court was truly purporting to address this type of unique scenario, where not only is the underlying claim still pending, but the District Court articulated in no uncertain terms in the ruling severing that I am doing it for this specific purpose. I didn't think Honeywell really captured that type of unique scenario. Well, the Ninth Circuit thought it did, didn't it, in the Herklots case. Your Honor, I think perhaps, I am not familiar with that case, but if that is the Ninth Circuit's reading, perhaps they may have attributed broader import to Honeywell that I think fairly could be read into the case. Because I do not think it was, based upon my reading, intended to directly address the unique circumstances of this matter. Again, where a court articulates in no uncertain terms, the reason that I am doing this is solely to facilitate the appeal, because the underlying actions are still pending, and the resolution of the appeal will actually facilitate the lower court's ability to more expeditiously resolve the pending actions. Well, but this severance was by agreement of the parties. Is that right? That is correct, Your Honor. What was the reason Rule 54 wasn't used? Your Honor, I think that it was perceived as a six-in-one-hand, half-in-a-dozen-in-the-other issue approach to doing so. Both perspectives were that this would be the most efficient way to facilitate the appeal. And now we're in the way. It just, where the case law says that severance under Rule 21 creates two separate actions, two different suits. And so that separate action now needs its own basis for jurisdiction. And this severance has defeated that with regard to the separate action. So I just, it just seems that my reading of that would have led to a decision that we need to try Rule 54 and not Rule 21. But I hear your answer. Okay. And I think that's a fair point. I just reemphasize that we think that it's a particular import that this was not done by the parties or with the district court from the perspective that it would truly de-link the separate action from the underlying action. And because, based on my reading again of the cases, I've not seen a scenario where that notion that the creation technically of two separate actions was addressing a fact pattern as unique as this, where not only is the underlying action still pending, but there was a very deliberate and intentional effort on the part of the district court to communicate the continuing nexus between the two actions. They may have a different cause of action number, but in substance were put in this procedural posture to facilitate the appeal only to allow a more expeditious resolution of the cause of action over which I don't believe there's any question that the district court had a federal question, I'm sorry, diversity jurisdiction. What's your best authority for the proposition that all the parties in the district court can all proceed under one rule, but we can sort of act as if they proceeded under a completely different rule on the assumption that that's what they meant? Um, Your Honor, I don't know that I would characterize that under the assumption that that's what they meant. And with respect to the authority... I'm just taking your hypothetical, your presentation, that I think you're saying everybody intended what 54B accomplishes, but everybody, for whatever reason, said 21 instead of 54B. So if that's sort of the pitch here, what's the best authority for the proposition that we can sort of assume they said 54B when in fact they said 21? Your Honor, I think I would probably characterize it in terms of I have not seen authority that suggests under this scenario, the kind of general notion that when you sever, you create two causes of action would preclude the exercise of jurisdiction when these causes of action unquestionably arose as third party claims. There is the jurisdiction that says when you have the third part, I'm sorry, the principles, this Court's jurisprudence that says when you have the third party action, you can look at the underlying cause of action. And I don't know that I've seen any interpretation of the Rule 21 principle that specifically addresses this scenario. And so it's the absence of a... But admittedly, you've got cases like Honeywell where we state this principle at a broad level of generality. I grant your point that Honeywell doesn't involve this particular situation, but it does state a principle. And I think that's the meaningful distinction because it's at such a broad level and it's not... What's the basis for the distinction? That's why I'm asking you if there's an authority for essentially a carve out because everybody just, you know, let's just assume it's obvious that everybody meant 54B. What is the grounds that we have? What would we be citing for proposition we can ignore 21, pretend that they meant 54B, I'm sorry, pretend that they said 54B on the basis that they meant 54B? Yeah. I think it's the absence of authority that speaks to this scenario. And to me, that's meaningful. The district court articulated... And the point of the rule, the utility of the Rule 54 certification, no one doubts, is to carve out what was part of the whole so that piece of it could be appealed. And with pending cause of action is interlocutory in nature. So there are no characteristics of this appeal that we think in substance are different than what would have happened under the Rule 54. And so our perspective on it is in the absence of some case authority that's looking at this specific scenario, and I didn't mean to be dismissive of the rules when I say elevating form over substance, but we don't think it's any binding authority or precedent that would require the court, when looking at this scenario, to apply the very broad-based generic Rule 21 principles, despite the inefficiencies that would be associated with what would happen here by dismissing based upon a purported or perceived lack of jurisdiction. When you have the convergence of the third-party practice principles, when you have the well- developed precedent of Rule 54 that says that there are some circumstances whereby there's finality in part, whereby we're going to allow interlocutory review of those parts. And so what would be gained procedurally, what would be gained candidly from the most conservative viewpoint of the rules of procedure and the objectives of the rule of procedure, we think would not only be little, we think it would frankly be non-existent. And so for that reason, we respectfully request that the Court approve this. Good morning, Your Honors. May it please the Court, Wes Allost for Packaging Concepts and Design. For the sake of efficiency, I will offer oral argument on behalf of all three appellees on the Chapter 82 issues. We reserve time for my colleague, Andrew Upton, to address the standing issue. This Court should affirm the Southern District's decision that neither Bentler Automotive nor Bentler Mexico are sellers of the Termos shipping container for indemnification purposes under Texas law. Appellants contend that by simply using the Termos, incidental to the stream of commerce, they are sellers. But their arguments fail for two reasons. One, they never relinquish title to the product at issue as required by the Texas Supreme Court's opinion in Amazon versus McMillan. And two, the product at issue never reaches the consuming public as required by the Texas Supreme Court's Armstrong rubber opinion. Appellants' definition of the stream of commerce does not comport with Texas jurisprudence. The Termos are not in the stream of commerce because they are never released to the consuming public under Armstrong rubber. To the extent that there was ever any uncertainty about the definition of seller under Chapter 82 in Texas common law, the Texas Supreme Court definitively answered that question in Amazon versus McMillan by stating that the legislator's definition of seller in Chapter 82 is consistent with and does not expand the common law definition. The Amazon court itself said that its opinion synthesized common law on this issue. And although the extent of seller liability is different under common law in Chapter 82, the definition of who constitutes a seller is similar. Under Amazon, to be a seller, one has to relinquish title to the product at some point in the distribution chain. Judge Willett succinctly summarized the Amazon versus McMillan opinion in a single sentence. Potentially liable sellers are limited to those who relinquish title to the product at some point in the distribution chain. Now, Mr. Knight said that appellees are contending that one definition for seller applies at all times and for all purposes. That's not exactly accurate. What Amazon clearly defines are three scenarios under Texas law. Traditional sellers who provide a product for a fee and transfer title, non-sale commercial transactions, which Amazon states include non-selling entities that for a commercial purpose otherwise place products in the stream of commerce for use or consumption, thus occupying a position equivalent to those who make sales. When Amazon stated that those engaging in non-sale commercial transactions must occupy a position equivalent to those who make sales, they were restricting the pool of potential sellers to those recognized by Texas common law. The Amazon court specifically stated we see no indication that the legislature intended for distributing or otherwise placing to include commercial behavior beyond ordinary sales and previously qualifying non-sale commercial transactions. Amazon cited the new Texas auto auction and the McKesson versus sales affiliates for that proposition, and that's important because the citation to those cases verified that Texas common law is still applicable in this analysis. Those cases demonstrate that a person involved in a non-commercial transaction need not transfer title to a product, but they must be in the business of Amazon makes it clear that Texas common law helps define seller status under chapter 82, and it underscores that non-sale transactions must involve the release of the product at issue to the consuming public as required by Armstrong rubber versus Erquidez and Progeny. Armstrong rubber clearly dictated that the stream of commerce must extend to the consuming public. The stream of commerce must flow to the ultimate consumer or consuming public, and that's the key distinction in the facts before the court in this matter. In our briefing, just something to you. Certainly, your honor. You're perfectly free to disregard it, but as you heard when we were questioning counsel opposite, the primary issue before we get to the substance is jurisdiction, and I gather your associate or your fellow counsel, Mr. Upton, is going to address that. Mr. Upton. And so, if I'm right, you might cut yours short and give him more time. I'd be glad to, your honor, and thank you. Mr. Upton is going to address the standing issue. With respect to jurisdiction, unfortunately, I have to defer to counsel Mr. Knight and agree with his evaluation of the procedural procedure of this case. The parties agreed to a severance under chapter 81 with the functional intent that that severance would place this issue before the court, and Mr. Knight has already argued to the court on that point, but I agree with his clarification. What about the Ninth Circuit in Herklotsch relying on Honeywell and saying that it lacked jurisdiction over a severed and transferred case? The severed action can no longer rely on the supplemental jurisdiction afforded by 1367, for there is nothing left to supplement. I understand, your honor. I have nothing else to add other than Mr. Knight's insight that in Honeywell, the underlying claim had been terminated, and in our case, the underlying claim by Mr. Velasquez against the Bentler entities is still ongoing and still includes the claims for which the Bentler entities seek indemnity against the third-party entities in this case. I'm sorry, your honor. I don't have anything else to offer to you on that. Thank you, your honor. Where are we in the case right now? I take it, sorry, I'm confusing where the parties are, but Velasquez is suing the Bentler entities in district court. That's proceeding. It's not over yet, I take it? Yes, your honor. There's plenty of time to add a new claim. There's been some discussion about, because Mr. Velasquez was injured in 2015, his case was filed initially in 2016. That case has been on the court's docket for quite some time, and there's been a conversation with the Southern District about administratively closing that file during the pendency of this appeal. As I understand it, that decision hasn't been reached yet, but as of right now, Mr. Velasquez has claims against the Bentler entities for negligence as well as some product liability type claims. I'm sorry, you're the third-party? We're the third-party defendants. I take it nothing preventing them from refiling, I'm sorry, from the Bentler entities from refiling their claims against you all in the event that the panel finds no jurisdiction? That's entirely possible, Judge, and I'm curious whether the district, and we would have to look at it, but whether the district court would retain jurisdiction and could simply recertify the question under 54. I don't know that's an issue that we'd have to grapple with with the Southern District. On a procedural basis, whether refiling the claims makes sense at that point or whether we could start from the district court's final judgment, an opinion summary judgment, and recertify the question. Well, I guess if the claim is severed and there's no jurisdiction over it, then there's no jurisdiction to issue the summary judgment ruling in the first place. Fair enough. Right. Now, I assume it's going to go back to the same judge, you're going to get the same ruling, I assume it could be done quickly, but as far as you know, there's nothing barring a refiling of the same claim again on remand. No, Your Honor, except that the summary judgment ruling was issued in the underlying case, the initially filed case, and so to the extent that jurisdiction was appropriate then, at the time of that court's ruling and at the time of the final judgment, and was then severed, jurisdiction existed at the time that summary judgment was granted. Thank you, Your Honors. Appreciate your time. Mr. Upton? If I may, just to follow up on that line of inquiry, let's take the hypothetical where a district court, let's take a much more simplified fact pattern, just A versus B, on motion for reconsideration or what have you, the district court suddenly realizes, oh my goodness, there's no diversity. Obviously, you vacate the summary judgment order at that time. Why would a different principle apply to this case? Your Honor, the different principle would apply in this case because when the case was originally filed, there was diversity of jurisdiction, and it was, I believe, three years after this case was originally filed when the third-party defendants were then brought into the case under the supplemental jurisdiction theory through third-party practice. And so in this situation, I would argue that the summary judgment would have been proper there as opposed to Your Honor's hypothetical, in which case, obviously, there would be no jurisdiction between any of the parties in that case. Your Honor, assuming that this court does have jurisdiction to get to the merits of the issues, as far as plaintiff standing to oppose the motions for summary judgment, this court should affirm the district court's decision finding that plaintiff lacks standing because plaintiff has never sued the third-party defendants, the statute of limitations to sue the third-party defendants has expired, and nothing will affect the presentation of Mr. Velazquez's case at trial, whether or not the third-party defendants are in this case. I'm sorry, what is expired? The statute of limitations for the plaintiff to file a claim against the third-party defendants himself. The only party who has asserted any claims against the third-party defendants are the Bentler defendants, and that is only under Chapter 82 indemnity. Okay, so the plaintiff can't file, but the plaintiff has never filed? Correct, yes, Your Honor. Is there anything preventing the defendants from filing against third-party defendants? Your Honor, I believe the only, because the only claim would be Chapter 82 indemnity, that's the only theory that has been brought, and my understanding at the lower court proceedings was by the time the third-party defendants were brought in, we identified the seller issue and pursued the summary judgment on that issue alone. Understood, but let's say the case goes away tomorrow, the third-party claim goes away tomorrow under this jurisdictional theory that we've been discussing. Any reason why they can't refile, why the Bentler entities can't refile tomorrow against the third-party defendants? Your Honor, the statute of limitations, I believe, has also expired for them, running from their discovery of the claim, unless Chapter 82, and we can look into it, if Your Honor would like, has some sort of savings clause or anything like that. It technically shouldn't matter. Right. In terms of whether there's jurisdiction or not, but I am curious if this is a situation where enforcing the forum doesn't result in any change in substance. Yes, Your Honor, and I'd be happy to do a 28-J on that specific issue if you'd like, and we'll get that filed as soon as I'm back in the office here today. Assuming that it does have to— If you do a 28-J, you're going to lean towards the result that the statute of limitations has run on their claim. That's the direction you're going to be leaning. Yes, Your Honor. All right. And I'll only follow a 28-J if it's something different in that case. In this case, Velazquez will not be aggrieved in any capacity by this decision. This is different from any of the cases where a co-defendant has standing by different district courts to oppose a co-defendant's motion for summary judgment. In this case, the only connection that the plaintiff has asserted he has, or the only interest in this case, is an indirect financial stake, and this court has never recognized an interest so remote as being sufficient to confer standing. In two cases addressing the standing to appeal a motion for summary judgment in this court, it's Rome and Haas, Texas v. Ortiz Brothers Installation and Scottsdale Insurance Company v. Knox Park Construction. In Rome, a series of speculative events had to unfold before the party would even be aggrieved, and that's the same here. Not only does the plaintiff have to prove his claims against the Bentler defendants, the Bentler defendants then have to turn around at the same trial, prove their claims against any of the third-party defendants, and Bentler then has to not satisfy a judgment in addition to the plaintiff forcing turnover rights. And here, there's nothing in the appellate record, and plaintiff can point us to nothing in the appellate record that gives any indication that the Bentler defendants will be unable to satisfy a judgment in this case. Your Honor, it is for these reasons that we ask that you, if you reach the underlying case, that find that plaintiff lacks standing to oppose your motions for summary judgment and decide the case on its merits. Thank you. Let me ask you one final question. The parties who were left in this, do they lack jurisdiction for lack of diversity? When you say that parties left in this, the third-party defendants in the separate action? The only diverse, the only jurisdiction for the statutory indemnification claims was supplemental jurisdiction. There's no diversity among those parties. So if this were severed and brought as a new action or the court would rule on it, would it have jurisdiction? Your Honor, if this was severed and a new action was brought on it, I believe there would not be diversity jurisdiction. I'm happy to double-check that and confirm that. Okay. Thank you. Thank you, Your Honor. Thank you, counsel. All right, rebuttal. Do you know if the statute of limitations has run on a future claim by defendants against third-party defendants? The defendants on third party under Chapter 82, I don't believe limitations would have run. I think they can still file tomorrow. I think they can still file tomorrow because I think that under Chapter 82, your right to indemnity arises during the entire proceeding. That is my understanding. I have not researched that. Sounds like you all agree that we should just ignore this problem, but you disagree on, if we disagree with all of you all, you all disagree on whether a refiling could take place. My second question would be, we could figure out the statute of limitations, I suppose, another time. But I'd be curious if you're aware of any authority in which the district court could vitiate or withdraw its 21 order. I am not. And in all candor with the court, having sat here and listened to the jurisdictional argument, I don't know of a way that the court can just ignore the rule under which a case was appealed. There are general principles of judicial economy that you see in things such as liberal pleadings rule, where let's try and get to the merits and let's resolve things. Because the reality or the result of what you all are talking about on jurisdiction is, we're going to vacate the summary judgment. We're going to go back down. They're going to vacate. Summary judgment was originally entered in the total proceeding. And then it was severed and the summary judgment was reentered. An argument could be made that the reentry of the summary judgment and the severed cause of action necessarily vacates. Because you can't have a summary judgment in two separate causes of action. And the parties aren't there. But I guess the summary judgment was only as to the third party claim. So it would only apply to the second action. The problem here is now there's no jurisdiction over it. Right. Right. And so you go back and the severed cause of action, it does get vacated. I mean, that summary judgment is vacated because there isn't jurisdiction. And so it's a void act. But then we fold back into the original. And what's ultimately going to happen, I mean, unless the court has a change of heart or sees things from a new perspective, which does happen sometimes rarely, they will reenter it and we'll be back up here again in front of a new panel or in front of this panel again doing the exact same thing. I mean, I suppose we can leave these issues to the district court on remand. All we really need to decide today is whether or not there's jurisdiction in light of the severance. In other words, the ongoing consequence, if any, of the previous summary judgment order is something we could reach or it's something we could not reach. Yeah. I think, you know, as hard as it is to say, I do think, I mean, if the court doesn't have jurisdiction, it'd be wrong to take any action. I just think that's it. I do, you know, I was trying, as I was sitting there trying to think of how you might carve something out where you could say, because obviously it'd be better to address the merits and resolve this here, but you would have to create some judicial doctrine of, okay, they have to be fair and done 54. Well, but as I understood, and this is my oversimplification of Mr. Knight's very eloquent argument, but there isn't any authority that says we should treat this Rule 21 situation as if it was 54B, but there isn't any authority that says we can't. Right. There isn't anything one way, and I think if you were looking for a distinction, because obviously if you're going to make a rule, you want to make it as narrow as possible. If you were looking for a distinction that separates it from the O'Neill case and the other cases was this severance occurred while the other proceeding was ongoing and continues to be ongoing. So this isn't something where there's nothing to go back to and nothing to tie back to. So, I mean, hopefully it's a unique factual situation in terms of the procedure and what everyone's intent was just to facilitate appellate review of the disposition of some separate rulings. You want to carve out and go ahead and get a ruling on these and allow the rest of the ... That was everyone's intent. Yes. Because it would be helpful to the overall resolution of the case. And so I think if you were going to make a carve-out, I think that is your carve-out, that your carve-out is you still have the underlying proceeding going on. So all that's going to be accomplished is we go back, same orders entered, we come right back up here, which is very different from where you have severed and the other case is gone. So I think you could draft an opinion very narrow saying we're going to reach the merits under these very unique circumstances, but ... And at least in part in the interest of judicial economy. Exactly. But also put in there, in the future, folks, think about when you're severing and what impact it could have because ... You mean Rule 54B, just use Rule 54B. Use 54B and because had this other proceeding, and I know I'm out of time and I'll step down, had this other proceeding not continued down in the district court, we'd be dead in the water. But I think you can use that to reach the merits. And I mean, I do think generally, for purposes of judicial economy, it's best to reach the merits whenever you can. Thank you very much. Thank you, counsel. All right. The court will take this matter under advisement. We'll proceed to the next case on today's docket, which is cause number 21-20434, Bissonnet versus Westmont International Development.